Our third case this morning is Vergara v. Ponte. Let's see. Mr. Horwitz. Good morning. Good morning. Would the court like me to address the Rule 4 issue, the procedural issue, or the substantive issue relative to the complaint? I think we need to take the procedural issue first. And we do have an issue buried there about the Jurisdiction. Well, no, it's not a jurisdictional argument. It's, if anything, a claims processing rule. It's not a jurisdictional rule argument. But the issue that I was about to raise is the fact that your reply brief was only provisionally accepted. There was a brief deficiency letter that was issued, and there was never a proper reply brief filed. Well, then, you were ordered to discuss this procedural issue, the Rule 4 and the forfeiture issue, as a consequence of the Hamer decision. I did not notice that that order was entered, the deficiency. Right, so your reply brief is sort of in ambiguous status right now. Well, I would say that the issue attributable to Rule 4 was litigated substantially before all the briefs, before the reply brief was done. In other words, the court specifically asked us to litigate that. Every argument that we had, I believe, was set forth there. Well, right, it was in the skirmish over the late disclosure statement, which had embedded in it a motion to dismiss, which is itself unreasonable, but that's okay. There's a lot of an unorthodox nature going on in this case. So you haven't seen the brief deficiency letter that our court issued? I did not see that. I would have handled that immediately. So all I can say is I would ask for leave to file the reply. The court, we can do that very quickly, and that's all I can ask. Okay. Well, let's talk about the procedural issue then and whether the city and the officers should be found to have forfeited the Rule 4 issue, the timeliness issue, by virtue of having filed a late docketing statement after the Walker case was decided. Right. So what I would just like to state is on balance in Walker v. Weatherspoon, the Seventh Circuit made plain that no one was following this rule, and no one knew this rule, and even, I guess I would like to say, was very bothered by the trial court when the trial court, and the Seventh Circuit's words were, lead plaintiffs down the garden path of saying, we'll enter our judgment later. And yes, Rule 4 says what it says. However, respectfully, I've been here a number of times. Kenneth Flaxman, the gentleman who prosecuted Weatherspoon, has probably prosecuted more appeals than anybody else, and no one knew about it. And so what Weatherspoon said is, oh, by the way, no one knows about this rule, and no one's using this rule. So respectfully, I would state within the standard of care of lawyers, we don't prosecute appeals before we see a judgment. And I just think it's, I mean, there is a sanctionable component to prosecuting appeals devoid of a legal basis, and there are remedies available to plaintiff's lawyers called motions to reconsider. And in this case, the court had waited 22 months before or afterwards, and that's just a very troubling place to be. We were waiting a lot, and I will say this is the second time with this court we've waited for almost two years for a decision, second different case, and we waited and waited. The court said in Walker that this sets a trap for the losing side and shouldn't be done, but we're here and we have this same issue, but instead of a waiver in a docketing statement of the timeliness issue, as in Hamer, we have a possible forfeiture because there was no docketing statement filed at all within the time required by our circuit rules. So our clear position would be that it is a forfeiture, that the Rule 3, 3C1, is mandatory, that it needs to be filed within 14 days, I believe, after our statement. They did not. And it's one of those procedural arguments that people make. They say, well, I want you to follow this rule, don't follow that rule. So please ignore our failure, but don't ignore plaintiff's failure, that kind of concept. And what I would say is on balance as to those two rules, again, the Walker court stated, oh, by the way, no one was following that 150-day docketing statement rule. So what do we do with the fact that our court authorized the late filing in Stanter? I think that courts should allow for late filings. I think that everybody should always be able to file something. But just not give it any effect? Well, I think daily lawyers are faced with issues of making sure their positions are put on record. Everybody should be able to have notice plus hearing, and the due process concept there is you get to set forth your argument. We'll accept it or we'll deny it. Everybody should always be able to file a document, I believe, and I think you just simply allow. At no time was there ever a ruling contrary to their representations that the court said, oh, you consented. This is now okay. This procedure is not this. You've undertaken a proper procedure. So we should not find a forfeiture. We should consider what was in the late docketing statement that was permitted to be filed in Stanter. No, I think that there's a – I think it seems to me on balance that traditional procedure would be that lawyers can always say something and they can always write something. They can file a document, even if the court says don't file it, just to preserve it for appellate court and for Supreme Court. I think one can always file if they're protecting themselves, I think. But no, I think that a substantive position is forfeited, that they filed it six months late, that they never filed it initially. Well, then why wouldn't we hold you to the same standard on your reply brief, which would be the first opportunity for you to address this per our order, because you overlooked the brief deficiency letter and didn't file a reply brief, a corrected reply brief in Stanter, which is what our rules require. I will leave that to the court's discretion. I've advised you as an officer of the court what I did. So we should forgive your oversight and our discretion, but not forgive your opponent's oversight? No. Treating the rule as mandatory in that situation, but not yours? Let's assume you apply the rule to us. We've already substantially articulated every position that we could argue in all of the briefing that occurred prior to the moment in time the court stated that we have a deficiency attributable to the reply brief. Every argument that we could set forth, we set it forth initially, and we set forth Walker clearly, and I guess we didn't address Hammer, as Your Honor stated. I think I could argue it now. I think that my argument would flow from the briefs that are already on file, of which there was a substantial amount of briefing, and I guess my argument would be, yes, you could allow for the filing of the brief, which I didn't anticipate I was going to say, but yes, there's a brief to be filed. I think lawyers should be able to file briefs. I always think lawyers should be able to argue things, and it's a question for the court as to how you handle it, whether it's preserved, et cetera. So I think that's the balancing. I also think that I don't know whether or not, and I haven't studied whether or not there's mandatory, the rule can be, there's an exception to the rule relative to the order of the court. So if the court said, yes, we're supposed to file, clearly we're supposed to file. I don't know if that carries the same weight as the jurisdictional, as Rule 4. Yeah, none of this is jurisdictional. Well, anyways, so that's my position. Okay. If you're asking me whether or not you should apply to them, apply to Peter, don't apply to Paul, et cetera. Well, I guess I'm not understanding your argument about the distinction between acceptance for filing and consideration of the argument. We can accept it for filing, but not consider anything that's in the document. I take it that that's what you're arguing. We should, it's okay for us to have accepted the late docketing statement, but we shouldn't consider anything that's in it. No. But we should accept your deficient brief or allow you to file a corrected brief late in Stanter and consider everything you say in that reply brief. No, I actually haven't said that. What I said is that lawyers should be able to file things to preserve issues for appeal, and then the court, upon the filing, whether lawyers make mistakes or not, should look at the issue. I don't think that the mere fact that they filed it late gives rise to a forfeiture in the context of we cannot consider anything contained within their brief. I think it gives rise to a forfeiture relative to the substance because it was filed six months late. That's the same thing. But you've got only a few seconds on the merits. Do you want to say something on the merits of your estoppel? I mean, it's pretty hard for me to sum it up in two seconds. Say something. Okay. I'll try to say it. I'll say something. What happened to my clients was an outrageous series of events relative to officers' conduct. And what happened to them was they're Hispanic gentlemen having coffee. The officers barge into the coffee shop. They were masked. They did not reveal themselves while masked. Okay? And making a longer story short, which is contained within the brief, they brought them to Holman Square. They attached them to a wall. They could not use the bathroom. They requested an attorney. They were not Mirandized. They specifically requested me, they said, because one gentleman knows me. I'd like to speak to Blake Horowitz. What is going on here, that sort of deal? In our complaint, we have set forth in our Monell claim that this location where they brought the plaintiffs was a black site, a location where they bring people and do exactly this thing. Right. Holman Square is notorious. We're well aware of the factual underpinnings here. But we have a limitations question whether there's an argument. Well, I think the relevance is because it goes to the third prong of substantial reliance. When the plaintiffs, whether or not they timely filed a lawsuit afterwards, that Monell component, as you said, Your Honor, we're aware of the black site concept. Well, were the plaintiffs aware? What they said was obviously the plaintiffs were scared. Okay? And the court stated their fear is justifiable. All these things happened to the plaintiff. There's three prongs relative to whether it was a timely filing. All right. There's three prongs. Met the first prong. Met the second prong. Their fear was reasonable. The court specifically said that. And there's no contest relative to that. The defendants have not said their fear was unreasonable. What they're now saying is as a matter of law, a year and a half is too long. And I just can't believe that anybody can say, anybody who just walks down the street, lives and breathes in the Chicagoland area, or is Hispanic, and officers threaten them, not just with the initial component, don't you dare call your lawyer, and specifically naming me, which is a peculiar thing to do. Don't call Blake. They mentioned my first name. That's what's in the complaint. That's my first name. And then they subsequently, for two weeks, they go and see my clients and threaten them. We're still here. We're watching you. Who in the right mind would not be terrified for their family, as said in the complaint, and for themselves, for their lives? How can somebody say, as a matter of law, at the complaint stage, how can somebody say that a year and a half was too long, meaning a year and a half after the statute of limitations expired, especially where what occurred in this case, as alleged, is there was a huge article that came out in the Guardian relative to bad conduct that occurs and hundreds of people have experienced. Guardian article comes out, and then 23 days later, we file. That specifically shows that we're relying upon the Guardian article. This case is different than all the other cases where it's a mere threat from the date of occurrence. The case law provides, and the Seventh Circuit has adopted, that if you've got an event that occurs on a date of occurrence and there's a threat, and we wait too long, plaintiff waits too long, no case. Statute of limitations expired. But if there's an event that takes place plus subsequent conduct that occurs, they call it subsequent blameworthy conduct, after the initial event, so there has to be two events, you've got two events, then the question becomes reasonable reliance, almost like a fraud concept. Reasonable reliance, and the trial court said everything was reasonable. It's reasonable for them to be terrified, in essence. So I guess that's the basic premise. All right, thank you very much, and I'll give you some time since I kept you at the podium on the procedural point. Mr. Collins. May it please the Court. Plaintiffs waited too long to file both their complaint and their notice of appeal. I'd like to start with the appeal, focusing specifically on this Court's order that the parties address whether defendants forfeited application of Rule 4. As a threshold matter, this appeal is untimely, and unless the Court has any questions about whether the appeal is too late pursuant to Rule 4, we rest on our brief. Let's explore the dicta in Judge Easterbrook's opinion and Hamer a bit. He says, quote, absence of a corrective docketing statement is not necessarily forfeiture of a timeliness argument, end quote. How should we read that? I didn't mean to preview it as dicta necessarily, but how are we supposed to read that statement? Because that's going to affect how we look at the timeliness. Sure, and with respect to forfeiture, our position is just as omission of a substantive argument from a docketing statement does not result in forfeiture. Likewise, it should be the case that a late file docketing statement that correctly asserts a timeliness problem should not result in forfeiture either. So here, defendants, as Your Honor noted, brought up the timeliness problem in our docketing statement, which defendants filed before they filed their appellees' brief and before the case was scheduled for oral argument. We acknowledge that defendants did not file the docketing statement within the 14 days provided under Circuit Rule 3C. Nevertheless, the docketing statement still served its essential purpose of bringing timeliness problems to the Court's attention early in the appeal. Additionally, Circuit Rule 3C doesn't say that an appellee forfeits timeliness arguments by not filing a docketing statement within 14 days. And moreover, just as omission from a docketing statement does not result in forfeiture, properly asserting a timeliness problem in a late docketing statement shouldn't result in forfeiture either. All of this flurry of procedural activity in the case was happening during a time when the case was basically on ice because of a Rule 33 mediation order, right? Yes, correct, Your Honor. And the briefing schedule kept getting rolled over as the mediation was being bumped down the road, et cetera, and the filing of the opening brief by the plaintiffs here occurred pursuant to one of those extended schedules and on time, but the very next day the briefing schedule was again extended so it appeared to have been one of those things that crossed in the mail kind of thing. Well, Your Honor, I believe the day following when the plaintiff's opening brief is filed, the court actually suspended further briefing, and I think that's an indication that at that time the court still expected the mediation to go forward instead of briefing. And indeed, at that point when plaintiffs filed their opening brief, the initial mediation discussion hadn't even taken place yet. It did take place sometime after that. Right, but so pending this mediation, the continually reset briefing schedule was still in place, and so the plaintiffs had no choice but to go ahead and file their opening brief. So it certainly can't be penalized for not addressing this issue there. That's true. They did file the brief on the due date as it stood at the time of filing, but it was nevertheless before the case had the opportunity to go through the court's mediation program. And so in light of the timing of the filing of the plaintiff's opening brief, we shouldn't be held to a forfeited application of Rule 4 by invoking it at the time we did, which immediately was after plaintiffs filed their opening brief. Additionally, we're not aware of any case holding that an appellee forfeits a timeiness problem by asserting it as quickly as we have here. And, in fact, in the Ninth and Tenth Circuits, it's efficient for an appellee to bring up timeliness problems in the appellee's brief, and we acted much sooner than that here. Well, the Circuit Rule 3C1 does say 14 days, and it does use the word must. That's correct. How are we to deal with that? Your Honor, we agree that that rule is mandatory, and in future cases, if the court wishes, it may choose to reject a proposed late docketing statement. Here, however, as the court has noted, the court accepted our admittedly late filing through our Insmanter motion. If the court reaches the merits, it should affirm the district court's judgment. Plaintiffs waited too long to file this lawsuit, and equitable estoppel does not prevent the defendants from asserting a defense based on the statute of limitations. Here, plaintiffs claim equitable estoppel based on the alleged conduct of the arresting officers in the weeks following plaintiff's detention. But when that conduct stopped, plaintiffs still had nearly the full two-year statute of limitations period to bring this lawsuit. They let that deadline come and go, and then waited an additional year and a half before finally suing. I think the argument is that the effect of the intimidation was so profound because it was so egregious that they didn't sleep on their rights as an equitable matter and sued quickly after the nefarious activities at Holman Square were uncovered and publicized. Yes, I believe that's the plaintiff's argument. However, as alleged by the plaintiffs, nearly three and a half years passed between plaintiff's last contact with the arresting officers and when they finally brought this lawsuit. Moreover, as plaintiffs argue on page 7 of their brief, the Guardian article made plaintiffs believe that their claims were more credible, but that's not a reason to apply equitable estoppel because equitable estoppel depends on and requires misconduct by the defendant that causes the late filing. Here, rather, it appears that plaintiffs decided to wait to sue until their claims became more credible as a result of this newspaper article. Well, I think the claim is that they could count, after the disclosure, the public exposure of what was going on at this station house, that the public authorities would provide them with protection should they bring forward their claims against these officers as a practical matter, because now the lid had been blown off of what was going on at this place. That may be your honor. However, our position is merely that the three and a half year gap  that it was unreasonable for the plaintiffs to postpone filing for as late as they did. And if the court has no further questions, this case should be dismissed, but if the court reaches the merits, it should affirm the district court's judgment. Thank you. Thank you. Mr. Horowitz, I'll give you an extra two minutes because I occupied your time with the procedural matter. Thank you. I just want to say pursuant to Hamer, relative to procedure that your honor brought up, it is a must, and they didn't do it. So the concept behind Walker v. Weatherspoon is we don't want people wasting their time filing briefs, et cetera, and everything to be corrected in the beginning. And in essence, the Walker court forgave everybody for their noncompliance with the rule that no one was following. That's what it seems to me. And I just want to also point out as to the procedure issue that the docket statement that we saw, it did say with prejudice, but interestingly there was no judgment entered. The judgment was entered 22 months later. So yes, it said dismissed with prejudice, but that was done, the judgment was entered 22 months later, and it's clearly within the standard of practice of lawyers. You just look at when is a judgment filed? And it's strange, notwithstanding this rule, it's strange for people to file, very strange, to file a blind appeal. I mean, just who does that? I just have never heard of it. I talked to a lot of appellate lawyers. Just no one files a blind appeal without knowing what the judgment is. And respectively, sanctions can be imposed for filing bogus appeals. Now, let's assume a sanction wouldn't be opposed because of the rule, right, Rule 4, where people can theoretically file blind appeals. I mean, we have to live in a world where we've got to be very careful as federal practitioners. And people don't file blind appeals. They just don't. And so I try to make sure I'm very careful in what I do, like a bunch of other lawyers do. We don't come and argue things that we don't know what we're talking about. We don't file appeals and we don't know if there's a legal basis to do so. Okay. With regards to the equitable estoppel principle, counsel just said, he just said one thing, basically. They didn't reasonably rely. And Your Honor brought up the fact that, so we're not changing gears. Your Honor brought up the fact that Holman Square is a notorious location. We were the first ones to actually bring that up. That was what our lawsuit provided, other than the guardian. We were the first lawsuit filed in that regard. And it really developed it, okay? And the Monell claim was set forth. And he said only one thing, just one comment. And the comment was, we don't think they reasonably relied. I mean, if it was a Twombly, Iqbal Twombly argument, and that was what he said in the complaint, the court would say, where are the facts to support your comment that there's no reasonable reliance? There's no facts. Just as the judge said, they had a reason to be terrified. And at the motion to dismiss stage, we can't answer the question of what's the duration. Maybe there's a lot of reasons for them to be terrified, above and beyond the complaint stage. But we're just at the complaint stage. That's all we're at. And the court already found that, and there's been no contest of the reasonable reliance, that they have a reason to be terrified. So how could we at the complaint stage, not summary judgment, ask ourselves, well, why did you wait so long? What was going on in your life? Why were you so concerned about your children dying or your wife dying or you dying by the hands of the police or being arrested again? Why were you so afraid of that? And, I mean, interestingly, not only does the court acknowledge what Home and Square is about, but the FBI filed a report establishing that since 2011, a heck of a lot of bad stuff's been going on in the city of Chicago by police officers. I mean, it's a pretty well-established fact. We hear about it in the news all the time. And people have a right to be concerned about officers. That's just a fact. Well, that's an argument for extending the statute of limitations in all civil rights cases against Chicago cops. That's taking it a little too far. No, it's not. It's not. That is specifically a rejected argument. I cannot make that argument if it's based upon the concept of reprisal from the date of occurrence. In other words, if you have a reprisal that if somebody threatened you on the date of occurrence, the date that the event occurred, the case law is plain. You can't seek equitable tolling. Cannot seek it. However, if you then have blameworthy conduct, meaning something that occurs subsequent to the date of occurrence, you have another event, then the court has created the exception, the trial court accepted it, no one has contested it, then you can then now ask the question, what's the tolling attributable to the blameworthy conduct if there's a second event? With ultimately the concept being exactly what you're on our address, which is we don't want to open up the floodgates. We don't want to have everybody come in and start filing lawsuits claiming, let's toll the statute of limitations because I was afraid. That is completely rejected. So in this case now we have to ask ourselves the question, if we were doing an Iqbal Twombly analysis, which is kind of where we're at at this stage even though it's not cited, is it a plausible argument? Is it plausible that the plaintiffs were terrified? And what would be the reason you're terrified? Not just what the officer said, but people are sort of like in a terror analysis and the opposite. You just take into consideration what's their thought process, what would the objective reasonable person under the situation be experiencing at that time? So what would the objective plaintiff be considering with the knowledge that the plaintiff had? And in that context you look at what a plaintiff would know, and what a plaintiff would know is all the stuff's going on. With the City of Chicago there was a concentric re-entered. The plaintiff didn't know that yet, but all this stuff was accumulating. News reports are going on all the time. These are things that human beings think about, and they're human beings, and we all think about it. We all think about retaliation by our government for the ones that are in power. Okay. Your time has long since expired. Thank you very much, Mr. Horwitz. Our thanks to all counsel. The case is taken under advisement.